United States District Court
Southern District of Texas
**ENTERED**
May 17, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT　　　　　SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| Rosa Flores and Victor Hernandez, Plaintiffs, <br><br> v. <br><br> American Medical Systems Inc., Defendant. | § § § § § § § § § Civil Action H-20-3573 |

# Report and Recommendation

Rosa Flores and Victor Hernandez filed this personal injury action against American Medical Systems, Inc. (AMS) alleging that the 2009 implantation of AMS's MonARC sling, a transvaginal pelvic mesh, caused Flores injuries, pain, and medical complications. ECF No. 1. Plaintiffs claim damages based on theories of negligence, failure to warn, design defect, manufacturing defect, and loss of consortium. *Id.* at 15–24. AMS moves for summary judgment on all of Plaintiffs' claims. The court recommends that AMS's motion be granted.

## 1. Background

According to the complaint, Flores had AMS's MonARC Sling pelvic mesh (the "mesh") surgically implanted on October 27, 2009, to treat urinary incontinence. ECF No. 1 at 3. Shortly after the procedure, Flores began to experience urinary retention, pelvic and vaginal pain, and dyspareunia (pain during intercourse). *Id.* at 4. On October 19, 2018, Flores had the mesh surgically removed. *Id.*

On October 19, 2020, Plaintiffs filed this suit against AMS. ECF No. 1. Plaintiffs allege that AMS was negligent in the design, manufacture, marketing, labeling, packaging, and selling of the mesh. *Id.* at 15. Plaintiffs further allege strict liability based on a design defect in the mesh. *Id.* at 22. Plaintiff Hernandez, Flores's husband, alleges loss of consortium due to Flores's pain and medical

complications. *Id.* at 24. Plaintiffs seek damages for Flores's pain and suffering, mental anguish, medical care, economic loss and loss of consortium. *Id.* at 26.

Plaintiffs' primary theory is that the polypropylene from which the mesh is made degrades when it interacts with human tissue, which causes medical complications. ECF No. 1 at 4–15. Plaintiffs allege that AMS knew or should have known of the dangers of using polypropylene in the mesh. *Id.* at 4, 8–14. Plaintiffs further allege that AMS's use of polypropylene in the mesh constitutes a design defect. Plaintiffs further allege that the procedure for implantation of the mesh was defectively designed. *Id.* at 9, 11, 13.

On October 13, 2021, Plaintiffs filed their expert disclosures listing Scott Guelcher, Ph.D., as their only retained expert witness. ECF No. 24 at 1. Dr. Guelcher's opinions concern only the interaction of polypropylene mesh with human tissue. *Id.* at 4. His opinions do not pertain to how the specific mesh implanted in Flores interacted with her body. Dr. Guelcher did not examine Flores or Flores's medical records and offers no opinion about how Flores may have been affected by the mesh. Plaintiffs listed several of Flores's treating physicians as non-retained expert witnesses including the excising surgeon, Jose Nieves-Sosa, M.D. *Id.* at 2.

On February 9, 2022, AMS filed a motion for summary judgment, arguing primarily that Plaintiffs presented no evidence specific to Flores to show that the mesh caused her injuries. ECF No. 30 at 4–6, 8–11. AMS argues that Hernandez's claim for loss of consortium is derivative of Flores's claims and must also be dismissed. *Id.* at 11. In support of its motion AMS cites Plaintiffs' expert disclosures, Dr. Guelcher's report, and Flores' treating physician's deposition. ECF Nos. 30-1–30-4.

Plaintiffs argue that Dr. Guelcher's expert opinion and Dr. Nieves-Sosa's deposition create a fact dispute on causation. ECF No. 31. In support of their response, Plaintiffs cite their complaint, a

2

document they refer to as a fact sheet,[1] Flores' medical records, Dr. Guelcher's expert summary of opinions, Flores's deposition, and the depositions of Drs. Asase and Nives-Sosa. ECF Nos. 31-1–31-8.

AMS timely replied on March 4, 2022, maintaining that none of the evidence cited by Plaintiffs' response address the specific causation of Flores's injuries. ECF No. 34 at 3–11.

2. *Summary Judgment Standard of Review*

"Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the nonmovant, 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Davenport v. Edward D. Jones & Co.*, 891 F.3d 162, 167 (5th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). No genuine issue of material fact exists if a rational jury could not find for the nonmoving party based on the complete record. *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 455 (5th Cir. 2019) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

"The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). If this burden is met, the nonmovant must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant must "go beyond the pleadings," using competent summary judgment evidence to cite to "specific facts" showing a genuine issue for trial. *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 468 (5th Cir. 2010) (quoting *Celotex Corp.*, 477 U.S. at 324). The court reviews all

---

[1] The "fact sheet" appears to be a form filled out by the Plaintiffs themselves.

evidence and reasonable inferences in the light most favorable to the nonmoving party. *Lincoln Gen. Ins. Co.*, 401 F.3d at 350.

3. *Analysis*
   a. *Products Liability*

Flores alleges negligence against AMS in the design, manufacture, marketing, labeling, packaging, and selling of the mesh. ECF No. 1 at 15. She also alleges strict liability under a design defect theory. *Id.* at 22.

Texas law places all of Flores's personal injury claims against AMS, as a manufacturer of an allegedly defective product, under the broad definition of products liability. Tex. Civ. Prac. & Rem. Code Ann. § 82.001(2); *see also Lashley v. Pfizer, Inc.*, 750 F.3d 470, 477 (5th Cir. 2014) (quoting Tex. Civ. Prac. & Rem. Code Ann. § 82.001(2)); *Del Valle v. Pliva, Inc.*, 2012 WL 4747259 at *6 (S.D. Tex. Sept. 12, 2012) (noting that Texas courts incorporate negligence within products liability where it relates to a product that allegedly caused injuries).

Under Texas law, proof of causation is required no matter how the plaintiff characterizes her product liability claims, whether as negligence, design defect, failure to warn, or any other form that the claim might take. *See Smith v. Robin America, Inc.*, 484 F. App'x 908, 912 (5th Cir. 2012) (citations omitted); *see also Meador v. Apple, Inc.*, 911 F.3d 260, 264 (5th Cir. 2018) (requiring the same causation element in separate claims for negligence and products liability); *see Wile v. Abbott*, 459 F. Supp. 3d 803, 806 (N.D. Tex. 2020) (granting summary judgment where plaintiff did not designate an expert witness on causation in a sophisticated medical device case). Thus, Flores must show causation with respect to all of her claims.

Causation must be shown to be both a substantial cause and a but-for cause, "namely one without which the event would not have occurred." *Emery v. Medtronic, Inc.*, 793 F. App'x 293, 295 (5th Cir. 2019) (discussing causation in a surgically implanted mesh case) (citing *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 46 (Tex. 2007)).

Although the parties briefed issues beyond causation, the court will address only causation because it is dispositive of Flores's claims.

Although there are exceptions, to support a products liability claim the Texas Supreme Court has "consistently required expert testimony and objective proof" as evidence to support causation. *Gharda USA, Inc. v. Control Solutions, Inc.*, 464 S.W.3d 338, 348 (Tex. 2015). Implanted medical device products liability cases, such as this one, "involve[] complex, highly technical analysis" which require significant expert testimony to show causation. *Greger v. C.R. Bard., Inc.*, 2021 WL 4502617 at *7 (E.D. Tex. Sept. 30, 2021). When a plaintiff fails to designate expert witnesses sufficient to show defendant's conduct was both a substantial and a but-for cause of plaintiff's injuries in a medical malpractice or products liability case, the plaintiff "will be unable to bear the burden of proof at trial." *Emery*, 793 F. App'x at 296. The expert testimony must establish causation by "some specific train of medical evidence." *Black v. Food Lion, Inc.*, 171 F.3d 308, 314 (5th Cir. 1999).

Here, Plaintiffs argue that Dr. Guelcher's expert opinions are sufficient to show that the mesh caused Flores's injuries. ECF No. 31 at 8, 10–12. The court makes no determination about Dr. Guelcher's expert qualifications or the validity of his opinions about how polypropylene mesh interacts with biological tissues generally. But it is undisputed that Dr. Guelcher offers no opinion about the cause of Flores's injuries. *Id.* at 4 (summarizing the opinions to be offered by Dr. Guelcher's expert testimony without mention of Flores). Again, Dr. Guelcher is not a medical doctor, he did not examine Flores, and he did not examine her records. The court observes that Dr. Guelcher opines that polypropylene "can lead to" injury if used in a surgical mesh. ECF No. 30-2 at 5. Such an opinion is a far cry from assigning causation in this specific case to the mesh implanted in Flores. Dr. Guelcher's expert opinions do not constitute evidence of causation specific to Flores's injuries.

Plaintiffs further argue that Dr. Nieves-Sosa's deposition testimony is sufficient to demonstrate causation. Dr. Nieves-Sosa was

the surgeon who excised the mesh from Flores. Specifically, at one point in his deposition Dr. Nieves-Sosa stated that he "believes Plaintiff's injuries were the result of her implant." ECF No. 31 at 4. A thorough reading of Dr. Nieves-Sosa's deposition demonstrates that he does not have a valid expert medical opinion about the cause of Flores's injuries. In response to whether Dr. Nieves-Sosa had a medical opinion about whether the mesh caused Flores's injuries he replied: "[p]retty much. I mean all I can say is that, from the chart, *'cause I don't have any specific memory of this patient.*" ECF No. 31-7 at 2 (emphasis added). Dr. Nieves-Sosa added, "[s]o I mean, if I'm getting a bunch of chart requests from attorneys, I got a little bit skittish in terms of like, doing the mesh, you know?" *Id.* at 3. Regarding his decision that removing the mesh was appropriate he pointed to the physical examination explaining, "[i]t was eroded. It was showing." *Id.* at 5. Finally, he testified, "I'm not saying it led to infection in this case, but it could, you know." *Id.*

Medical opinions such as Dr. Nieves-Sosa's cannot provide evidence of causation in cases such as this one. "A physician, even a treating physician, or other expert who has seen a skewed data sample [of limited patients] . . . is not in a position to infer causation." *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 719 (Tex. 1997). "Post hoc, speculative testimony will not suffice . . . an expert's assertion that a physical examination confirmed causation should not be accepted at face value." *Id.* at 719–720. "[T]estimony to the effect that a substance 'could' or 'can' cause a disease or disorder is not evidence that in reasonable probability it does." *Id.* at 729. Thus, Plaintiffs cannot present Dr. Nieves-Sosa as an expert witness on causation.

Because, to succeed on any of her claims, Flores must prove that the mesh was the but for cause her injuries by a specific train of

6

medical evidence, and because Flores cannot do so,[2] AMS has satisfied its burden to demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

### b. Loss of Consortium

Plaintiff Hernandez's loss of consortium claim also fails as a matter of law. "As the Supreme Court of Texas has explained, loss of consortium claims are 'derivative' claims that presuppose the ability to show 'the tortfeasor's liability for [the other spouse's] physical injuries.'" *Gutierrez v. Ethicon, Inc.*, 535 F. Supp. 3d 608, 638 (W.D. Tex. 2021) (quoting *Reed Tool Co. v. Copelin*, 610 S.W.2d 736, 738 (Tex. 1980)) (alteration in original). "[W]here the tortfeasor is not liable to the injured spouse, there can be no derivative liability under a loss-of-consortium theory to the uninjured spouse." *Id.* (citing *Barker v. Halliburton Co.*, 645 F.3d 297, 299-300 (5th Cir. 2011). Because the court found that AMS is entitled to summary judgment on Flores's products liability claims, AMS is also entitled to summary judgment on Hernandez's loss of consortium claim. No rational jury could find in favor of Hernandez on loss of consortium as a matter of law.

### 4. Conclusion

Because Plaintiffs fail to produce expert witness evidence demonstrating a genuine dispute of material fact, the court recommends that AMS's motion for summary judgment be granted and that this case be dismissed with prejudice.

The parties have fourteen days from service of this memorandum and recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions,

---

[2] Flores also cites her medical records as evidence of causation. The records show she had medical problems, but not that the mesh caused them.

except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas, on May 16, 2022.

_____
Peter Bray
United States Magistrate Judge