Case 4:20-cv-03573   Document 40   Filed on 07/01/22 in TXSD   Page 1 of 11

United States District Court
Southern District of Texas

**ENTERED**
July 01, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT    SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| Rosa Flores and Victor Hernandez, Plaintiffs, | § § § § | |
| v. | § | Civil Action H-20-3573 |
| American Medical Systems Inc., Defendant. | § § § § | |

# Amended Report and Recommendation

The Report and Recommendation entered on May 16, 2022, ECF No. 35, is withdrawn and this Amended Report and Recommendation takes its place.

Rosa Flores and Victor Hernandez filed this products liability action against American Medical Systems, Inc. (AMS) alleging that the 2009 implantation of AMS's MonARC sling, a transvaginal pelvic mesh, caused Flores injuries, pain, and medical complications. ECF No. 1. Plaintiffs claim damages based on theories of negligence, failure to warn, design defect, manufacturing defect, and loss of consortium. *Id.* at 15–24. AMS moves for summary judgment on all of Plaintiffs' claims. The court recommends that AMS's motion be granted.

*1. Background*

According to the complaint, Flores had AMS's MonARC Sling pelvic mesh (the "mesh") surgically implanted on October 27, 2009, to treat urinary incontinence. ECF No. 1 at 3. Shortly after the procedure, Flores alleges that she began to experience urinary retention, pelvic and vaginal pain, and dyspareunia (pain during intercourse). *Id.* at 4. On October 19, 2018, Flores had the mesh surgically removed. *Id.*

On October 19, 2020, Plaintiffs filed this suit against AMS. ECF No. 1. Plaintiffs allege that AMS was negligent in the design,

manufacture, marketing, labeling, packaging, and selling of the mesh. *Id.* at 15. Plaintiffs further allege strict liability based on a design defect in the mesh. *Id.* at 22. Plaintiff Hernandez, Flores's husband, alleges loss of consortium due to Flores's pain and medical complications. *Id.* at 24. Plaintiffs seek damages for Flores's pain and suffering, mental anguish, medical care, economic loss, and loss of consortium. *Id.* at 26.

Plaintiffs' primary theory is that the polypropylene from which the mesh is made degrades when it interacts with human tissue, which causes medical complications. ECF No. 1 at 4–15. Plaintiffs allege that AMS knew or should have known of the dangers of using polypropylene in the mesh. *Id.* at 4, 8–14. Plaintiffs further allege that AMS's use of polypropylene in the mesh constitutes a design defect. Plaintiffs further allege that the procedure for implantation of the mesh was defectively designed. *Id.* at 9, 11, 13.

On October 13, 2021, Plaintiffs filed their expert disclosures listing Scott Guelcher, Ph.D., as their only retained expert witness. ECF No. 24 at 1. Dr. Guelcher's opinions concern only the interaction of polypropylene mesh with human tissue. *Id.* at 4. His opinions do not pertain to how the specific mesh implanted in Flores interacted with her body. Dr. Guelcher did not examine Flores or Flores's medical records and offers no opinion about how Flores may have been affected by the mesh. Plaintiffs listed several of Flores's treating physicians as non-retained expert witnesses including the excising surgeon, Jose Nieves-Sosa, M.D. *Id.* at 2.

On February 9, 2022, AMS filed a motion for summary judgment, arguing primarily that Plaintiffs presented no evidence specific to Flores to show that the mesh caused her injuries. ECF No. 30 at 4–6, 8–11. AMS argues that Hernandez's claim for loss of consortium is derivative of Flores's claims and must also be dismissed. *Id.* at 11. In support of its motion AMS cites Plaintiffs' expert disclosures, Dr. Guelcher's report, and Flores' treating physician's deposition. ECF Nos. 30-1–30-4.

Plaintiffs argue that Dr. Guelcher's expert opinion and Dr. Nieves-Sosa's deposition create a fact dispute on causation. ECF No. 31. In support of their response, Plaintiffs cite their complaint, a document they refer to as a fact sheet,[1] Flores' medical records, Dr. Guelcher's expert summary of opinions, Flores's deposition, and portions of the depositions of Drs. Asase and Nieves-Sosa. ECF Nos. 31-1–31-8.

AMS timely replied on March 4, 2022, maintaining that none of the evidence cited by Plaintiffs' response address the specific causation of Flores's injuries. ECF No. 34 at 3–11.

After the court entered its recommended that AMS's summary judgment motion be granted, ECF No. 35, Plaintiff filed objections and cited parts of Dr. Nieves-Sosa's depositions that had not been submitted to the court. ECF No. 36 at 6. To prevent any confusion or unnecessary litigation that might arise from arguments about an incomplete record, the court held a hearing on June 3, 2022, to discuss a solution. Plaintiff's counsel did not appear at the hearing. The court ordered that Defense counsel submit the entirety of Dr. Nieves-Sosa's deposition so that the court could, *sua sponte*, reconsider the Report and Recommendation with a complete record. ECF No. 38. The parties had fourteen days to object to that order, but no objections were filed. The court thus reconsiders its previous ruling considering Dr. Nieves-Sosa's full deposition, ECF No. 39, and reaffirms its previous recommendation for the reasons that follow.

## 2. *Summary Judgment Standard of Review*

"Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the nonmovant, 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Davenport v.*

---

[1] The "fact sheet" appears to be a form filled out by the Plaintiffs themselves.

*Edward D. Jones & Co.*, 891 F.3d 162, 167 (5th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). No genuine issue of material fact exists if a rational jury could not find for the nonmoving party based on the complete record. *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 455 (5th Cir. 2019) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

"The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). If this burden is met, the nonmovant must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant must "go beyond the pleadings," using competent summary judgment evidence to cite to "specific facts" showing a genuine issue for trial. *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 468 (5th Cir. 2010) (quoting *Celotex Corp.*, 477 U.S. at 324). The court reviews all evidence and reasonable inferences in the light most favorable to the nonmoving party. *Lincoln Gen. Ins. Co.*, 401 F.3d at 350.

3. *Analysis*
   a. *Products Liability*

Flores alleges negligence against AMS in the design, manufacture, marketing, labeling, packaging, and selling of the mesh. ECF No. 1 at 15. She also alleges strict liability under a design defect theory. *Id.* at 22.

Texas law places all of Flores's personal injury claims against AMS, as a manufacturer of an allegedly defective product, under the broad definition of products liability. Tex. Civ. Prac. & Rem. Code Ann. § 82.001(2); *see also Lashley v. Pfizer, Inc.*, 750 F.3d 470, 477 (5th Cir. 2014) (quoting Tex. Civ. Prac. & Rem. Code Ann. § 82.001(2)); *Del Valle v. Pliva, Inc.*, 2012 WL 4747259 at *6 (S.D. Tex. Sept. 12, 2012) (noting that Texas courts incorporate negligence within products liability where it relates to a product that allegedly caused injuries).

Under Texas law, proof of causation is required no matter how the plaintiff characterizes her product liability claims, whether as negligence, design defect, failure to warn, or any other form that the claim might take. *See Smith v. Robin America, Inc.*, 484 F. App'x 908, 912 (5th Cir. 2012) (citations omitted) (finding that a "plaintiff bears the burden of proving" that "there was a causal connection" as an element to a products liability claim); *see also Meador v. Apple, Inc.*, 911 F.3d 260, 264 (5th Cir. 2018) (requiring the same causation element in separate claims for negligence and products liability); *see Wile v. Abbott*, 459 F. Supp. 3d 803, 806 (N.D. Tex. 2020) (granting summary judgment where plaintiff did not designate an expert witness on causation in a sophisticated medical device case). Thus, Flores must show causation with respect to all of her claims.

Causation must be shown to be both a substantial cause and a but-for cause, "namely one without which the event would not have occurred." *Emery v. Medtronic, Inc.*, 793 F. App'x 293, 295 (5th Cir. 2019) (discussing causation in a surgically implanted mesh case) (citing *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 46 (Tex. 2007)). Although the parties briefed issues beyond causation, the court will address only causation because it is dispositive of Flores's claims.

Although there are exceptions, to support a products liability claim the Texas Supreme Court has "consistently required expert testimony and objective proof" as evidence to support causation. *Gharda USA, Inc. v. Control Solutions, Inc.*, 464 S.W.3d 338, 348 (Tex. 2015). Implanted medical device products liability cases, such as this one, "involve[] complex, highly technical analysis" which require significant expert testimony to show causation. *Greger v. C.R. Bard., Inc.*, 2021 WL 4502617 at *7 (E.D. Tex. Sept. 30, 2021). When a plaintiff fails to designate expert witnesses sufficient to show defendant's conduct was the cause of plaintiff's injuries in a medical malpractice or products liability case, the plaintiff "will be unable to bear the burden of proof at trial." *Emery*, 793 F. App'x at 296. The expert testimony must establish causation by "some specific train of

medical evidence." *Black v. Food Lion, Inc.*, 171 F.3d 308, 314 (5th Cir. 1999).

Here, Plaintiffs argue that Dr. Guelcher's expert opinions are sufficient to show that the mesh caused Flores's injuries. ECF No. 31 at 8, 10–12. The court makes no determination about Dr. Guelcher's expert qualifications or the validity of his opinions about how polypropylene mesh interacts with biological tissues generally. But it is undisputed that Dr. Guelcher offers no opinion about the specific cause of Flores's injuries. *Id.* at 4 (summarizing the opinions to be offered by Dr. Guelcher's expert testimony without mention of Flores).

Dr. Guelcher is not a medical doctor. He is an engineer. ECF No. 30-3 at 2. He did not examine Flores, and he did not examine her records. His opinions are limited to explaining the scientific mechanisms by which a polypropylene mesh could cause a person medical problems. He explains that polypropylene, when implanted in a person's body reacts with reactive oxygen species resulting in oxidation, chain scission (breaks in the polypropylene's molecular chain), and mesh embrittlement. *Id.* at 4-5. He opines that the polypropylene reacts chemically with human tissue to cause the mesh to degrade, flake, pit, and crack. *Id.* at 4, 7, 9, 12, 14, 17, 18, 21, 23. He explains that these chemical reactions "can lead" to, among other things, tissue damage, inflammation, deformation of the mesh, and pain. *Id.* at 4, 8-9, 11, 17

Dr. Guelcher's expert report establishes only the possibility that polypropylene will cause medical complications when it comes into contact with human tissues. Throughout his report, Dr. Guelcher explains that polypropylene "can lead to" injury if used in a surgical mesh. *E.g.*, ECF No. 30-3 at 17, 23. The court thus fully appreciates that the mesh involved in this case might very well cause some number of people medical problems. But a mere possibility is not enough. To establish that a product was the cause-in-fact of plaintiff's injury an expert must demonstrate a specific train of medical evidence

6

connecting the illness to the product. *See Greger,* 2021 WL at *6 (relying on *Black,* 171 F.3d at 314).

Plaintiffs turn to Dr. Nieves-Sosa to close the loop on specific causation. The court concludes that Dr. Nieves-Sosa's testimony, taken in the light most favorable to the Plaintiff, and drawing all inferences in Plaintiff's favor, does not raise a genuine issue of material fact on specific causation.

Dr. Nieves-Sosa was not retained as an expert for the purpose of forming an opinion on causation. He is the treating physician who explanted Ms. Flores's mesh. He thus may testify about what he did and saw before, during, and after the surgery. To the extent that determining causation was a necessary part of his treatment of Ms. Flores, he may testify about that. *Fielden v. CSX Transp., Inc.,* 482 F.3d 866, 870–71 (6th Cir. 2007) (reasoning that a treating physician may testify without an expert report only to treatment observations and medical record review up to and including the treatment). Dr. Nieves-Sosa did not prepare a report in this case and did not submit a declaration in support of Plaintiff's response to the summary judgment motion. Thus, his deposition testimony, the full text of which is now before the court, is the only evidence of Dr. Nieves-Sosa's opinions, if any, on causation. The court has reviewed Dr. Nieves-Sosa's entire deposition and concludes that it does not contain evidence of specific causation. That is, Dr. Nieves-Sosa does not testify about any defect in the mesh, and does not testify about any tie between any defect in the mesh and Flores's injuries. Plaintiff's counsel did ask Dr. Nieves-Sosa to give an opinion on causation, but the answer is to an inartful question, is not based on any analysis or methodology, and is entirely conclusory. Thus, taken as a whole, and in the light most favorable to the Plaintiff, Dr. Nieves-Sosa's deposition testimony does not raise a genuine issue of material fact on the issue of specific causation.

During Dr. Nieves-Sosa's deposition, and, to some extent, in briefing before this court, Plaintiff's counsel focuses on the wrong issue. The question is not whether the mesh needed to be explanted.

It clearly did. The question is whether the alleged defect in the mesh was a specific cause of Flores's injuries—including the need to undergo explantation surgery. Dr. Nieves-Sosa does not testify about that. Here is the question and answer that Plaintiff relies on to provide evidence of specific causation:

> Q: Okay. In your medical opinion, do you believe that the plaintiff's injuries were a result of her sling?
>
> A: Pretty much. I mean, all I can say is that, from the chart, 'cause I don't have any specific memory of this patient. From the chart I can tell that it was exposed. And when it's exposed it does present a risk of infection so that's why I went ahead and removed it. I don't remove them on everybody who comes into - - and asks for them to be removed.

ECF No. 39 at 39-40. Thus, the question asked of Dr. Nieves-Sosa has nothing to do with any alleged defect. Dr. Nieves-Sosa did not associate any defect in the mesh with any of Flores's medical problems. He said nothing more than that the mesh was exposed and for that reason needed to be removed. When asked whether removal was necessary, Dr. Nieves-Sosa stated that "[i]t was eroded. It was showing. ... So she did have something wrong with her." *Id.* at 45. He went on to explain that "if you have a mesh that you can see during the exam, that [is] enough for me to take it off. That's kind of like almost it's a direct access to [] the spaces in the pelvis, so - - you know, that could lead to infection. I'm not saying that it led to infection in this case, but it could, you know. So - - yes, it's appropriate to take them out." ECF No. 39 at 45. Dr. Nieves-Sosa's testimony shows that the exposed mesh presented a risk of a future medical problem, not that it was causing her any current problems, and not that any defect in the mesh was the cause of the exposure he treated.

Moreover, Dr. Nieves-Sosa engaged in no analysis of Ms. Flores's medical history to determine the cause of Flores's medical

8

issues. Dr. Nieves-Sosa's knowledge of Ms. Flores's medical history is limited. When asked whether Flores had any history of pain complaints, Dr. Nieves-Sosa stated that "all I have in the chart is that she had come vague abdominal pain complaints and all that and that's all I can tell from the chart." *Id.* at 40. Dr. Nieves-Sosa has no memory of Flores. ECF No. 39 at 15. The mesh exposure was discovered during a preventive care visit. ECF No. 39 at 17. At that time, Flores was not reporting any complaints. *Id.* The exposed mesh was the only abnormality found during the visit. *Id.* at 18. On September 17, 2018, Flores was complaining about "vague abdominal pain," which was "not likely to be affected by TVT removal." *Id.* at 19. At the same visit, she was complaining of incontinence. *Id.* On October 19, 2018, the date of the explantation surgery, Flores was complaining of vaginal pain and the exposed mesh was again noted, but Dr. Nieves-Sosa did not testify about any connection between the pain and the exposure. *Id.* at 23.

Dr. Nieves-Sosa also fails to even consider, let alone exclude, other possible causes of Flores's symptoms. *See Conn v. C.R. Bard*, 4:14-cv-298, 2021 WL 2346036 at *7 (S.D. Tex. 2021) (finding that an expert medical witness must consider at least some other causes); *see also Greger v. C.R. Bard*, 4:16-CV-675-SDJ. 2021 WL 3855474 at *6–*7 (E.D. Tex. 2021 (same); *see also Johnson & Johnson v. Batiste*, 2015 WL 6751063 at *4 (Tex. App. — Dallas Nov. 2, 2015) (same) (citing *E.I. Dupont Nemours & Co., Inc. v. Robinson*, 923 S.W.2d 549, 558–59 (Tex. 1995). For example, Dr. Nieves-Sosa's records showed that Flores suffered from vaginal atrophy, which he explained can increase the likelihood of infection. ECF No. 39 at 32. But there is no discussion of that condition or any attempt to exclude it as a possible cause of Flores's symptoms.

Dr. Nieves-Sosa's testimony also does not establish that the mesh interacted with Flores's body in the way that Dr. Guelcher's report predicts that it might. Dr. Nieves-Sosa's operative notes did not reflect any degradation of the mesh upon removal. ECF No. 39 at 28. His operative notes also did not show any infection of the mesh. *Id.*

9

Dr. Nieves-Sosa is not an expert on the materials out of which vaginal meshes are made. ECF No. 39 at 41. He does not routinely review scientific materials pertaining to polypropylene meshes. ECF No. 39 at 35. He does not attend seminars specific to polypropylene meshes. ECF No. 39 at 36. He has no specific training on polypropylene transvaginal mesh. *Id.* At no point in his deposition did Dr. Nieves-Sosa even mention a defect in the mesh. In fact, he testified that "in [his] experience [he] didn't have any problems with the slings." ECF No. 39 at 14. When asked whether polypropylene midurethral slings are a safe treatment option for his patient population, he stated "[t]hey have a place." *Id.* at 43. He does not remove them from every patient that requests it. He removes them only if they are causing a problem. *Id.* at 43-44.

The undisputed evidence shows only that Dr. Nieves-Sosa was trying to prevent a possible future problem by removing the mesh from Flores. He was not concerned with the materials out of which the mesh was made, or the reaction that those materials might have with the tissues in Flores's body. His conclusory statements in response to misplaced questions are insufficient to raise a genuine issue of material fact on causation. There is no evidence that Dr. Nieves-Sosa ever determined the cause of Flores's medical problems.

Because, to succeed on any of her claims, Flores must prove that the mesh was a substantial cause her injuries by a specific train of medical evidence, and because Flores cannot do so,[2] AMS has satisfied its burden to demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

---

[2] Flores also cites her medical records as evidence of causation. The records show she had medical problems, but not that the mesh caused them. Moreover, in a products liability case medical records alone cannot create a fact issue as to causation absent expert witness on them. *See Greger, 2021 WL 4502617 at \*7.*

### b. Loss of Consortium

Plaintiff Hernandez's loss of consortium claim also fails as a matter of law. "As the Supreme Court of Texas has explained, loss of consortium claims are 'derivative' claims that presuppose the ability to show 'the tortfeasor's liability for [the other spouse's] physical injuries.'" *Gutierrez v. Ethicon, Inc.*, 535 F. Supp. 3d 608, 638 (W.D. Tex. 2021) (quoting *Reed Tool Co. v. Copelin*, 610 S.W.2d 736, 738 (Tex. 1980)) (alteration in original). "[W]here the tortfeasor is not liable to the injured spouse, there can be no derivative liability under a loss-of-consortium theory to the uninjured spouse." *Id.* (citing *Barker v. Halliburton Co.*, 645 F.3d 297, 299-300 (5th Cir. 2011). Because the court found that AMS is entitled to summary judgment on Flores's products liability claims, AMS is also entitled to summary judgment on Hernandez's loss of consortium claim. No rational jury could find in favor of Hernandez on loss of consortium as a matter of law.

### 4. Conclusion

Because there is no genuine dispute of material fact, and AMS is entitled to judgment as a matter of law, the court recommends that AMS's motion for summary judgment be granted and that this case be dismissed with prejudice.

The parties have fourteen days from service of this memorandum and recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas, on July 1, 2022.

Peter Bray
United States Magistrate Judge